UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| FISHMAN JACKSON PLLC f/k/a | ) | |
| FISHMAN JACKSON LUEBKER PLLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:15-CV-2897-G |
| | ) | |
| ILAN ISRAELY, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |


**MEMORANDUM OPINION AND ORDER**


Before the court is the plaintiff's motion to vacate (docket entry 19) the stay

granted by the court on December 14, 2015 (docket entry 18).  For the reasons

stated below, the motion is denied.

I.  BACKGROUND

A.  Factual Background

This case concerns claims by Fishman Jackson PLLC ("Fishman Jackson")

against Ilan Israely ("Israely") for unpaid attorney's fees, as well as Israely's

counterclaims against Fishman Jackson for breach of contract and legal malpractice.

Defendant's Motion to Stay Proceeding Pending State Court Appeal and Brief in

Support ("Defendant's Motion to Stay") ¶ 1 (docket entry 15). Fishman Jackson

represented Israely as a defendant in a lawsuit tried before a state court jury in the

370th District Court in Hidalgo Country, Texas ("the Hidalgo County lawsuit"). See

*id.* The jury reached a verdict adverse to Israely, and, in October 2014, the state trial

court entered judgment against Israely in the amount of $2,665,832.72 for damages

and $569,062 for attorney's fees. *Id.*

Israely appealed the judgment of the state trial court. *Id.* Israely's appeal ("the

state court appeal") is currently pending before the Texas Thirteenth District Court

of Appeals. *Id.* The parties to the state court appeal are Israely and Sky View at Las

Palmas LLC, as appellants, and Roman Geronimo Martinez Mendez and San Jacinto

Title Services of Rio Grande Vallet, LLC, as appellees. Plaintiff's Motion to Vacate

Stay ("Plaintiff's Motion to Vacate") ¶ 8 (docket entry 19).

On September 3, 2015, Fishman Jackson filed the current suit seeking recovery

of unpaid legal fees for the services it rendered to Israely defending him in the

Hidalgo County lawsuit. Defendant's Motion to Stay ¶ 2. Israely filed a

counterclaim for breach of contract and legal malpractice. *Id.* In his counterclaim,

Israely alleged that "Fishman Jackson failed to object at trial to the presentation of . .

. evidence of [the] [state court] plaintiff's attorney's fees which were awarded in full

against [Israely]" and that Fishman Jackson's alleged failure to object "resulted in an

award of attorney's fees against Israely on fraud claims for which no attorney's fees

were recoverable." *Id.*  Israely also alleged that he had other potential malpractice

claims against Fishman Jackson.  *Id.*  Fishman Jackson maintains that Israely's

malpractice claims are "frivolous and utterly without merit."  Plaintiff's Reply to

Defendant's Response to Motion to Vacate Stay ("Plaintiff's Reply") ¶ 12 (docket

entry 21).  Israely intends to use his claims of attorney malpractice as a defense to

Fishman Jackson's fee claims.  *See* Defendant's Motion to Stay ¶ 5.

In the state court appeal, the state appellate court will decide whether the

award of attorney's fees against Israely in the Hidalgo County lawsuit was "excessive."

*Id.* ¶ 7.  If the state appellate court finds that the award was excessive, it could

remand the case to the state trial court, rendering Israely's primary malpractice

counterclaim in the current case moot.  *Id.*  Israely also claims that the state appellate

court could reverse most of the damages against him or, conversely, give him grounds

for additional malpractice claims against Fishman Jackson.  *Id.* ¶ 9.  The reply brief in

the state court appeal was due on January 15, 2016.  Defendant's Motion to Stay ¶

11.

## B.  Procedural Background

On December 10, 2015, Israely filed a motion to stay proceedings in this court

pending the state court appeal.  See *id.*  In the motion, Israely argued that this court

should stay the current case under the court's inherent powers.  *Id.* ¶ 4.  Israely relied

on a legal test derived from the United States Supreme Court's decision in *Landis v.*

*North American Co.*, 299 U.S. 248 (1936).  *Id.*  He maintained that Fishman Jackson could suffer no injury from the stay, because the resolution of the state court appeal could possibly help Fishman Jackson.  *Id.* ¶ 9.  Israely also argued that granting the stay would be an efficient use of judicial resources and that the stay could help him by giving him grounds for additional malpractice claims against Fishman Jackson.  *Id.* ¶¶ 9-10.  The court granted the stay requested by Israely four days later on December 14, 2015, pending the result of the state court appeal.  *See* Order of December 14, 2015 (docket entry 18).

On December 21, 2015, after the court granted the stay, Fishman Jackson filed a motion to vacate the stay.  *See* Plaintiff's Motion to Vacate.  Fishman Jackson argued that this court may only issue a stay pending a state court decision under "extraordinary circumstances."  *Id.* ¶ 3.  Fishman Jackson relied on a legal test derived from the United States Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  See *id.* ¶ 6.  First, Fishman Jackson argued that a stay was inappropriate under *Colorado River,* because the state court appeal and the case before this court are not "parallel."  *Id.* ¶ 7.  In the alternative, Fishman Jackson contended that, even if the cases were parallel, the court did not have discretion to grant the stay, because the *Colorado River* factors weighed against a stay.  *Id.* ¶ 10.

On January 11, 2016, Israely filed a response to Fishman Jackson's motion to vacate.  *See* Defendant's Response to Motion to Vacate Stay ("Defendant's Response") (docket entry 20).  In his response, Israely did not address the *Colorado River* factors.  See *id.* ¶ 3.  Instead, Israely reiterated that he had sought a stay under the court's inherent powers recognized in the *Landis* decision, rather than under the *Colorado River* test.  *Id.* ¶ 4.  Israely incorporated the arguments he made in his original motion to stay into his response.  *Id.*

On January 25, 2016, Fishman Jackson filed a reply.  *See* Plaintiff's Reply.  In the reply, Fishman Jackson argued that "as between state and federal courts," the *Colorado River* test, not the *Landis* decision, controls.  *Id.* ¶ 3.  In the alternative, Fishman Jackson argued that -- even under a test derived from the *Landis* decision -- a stay pending the state appellate court decision was inappropriate.  *Id.* ¶¶ 4-10.  In particular, Fishman Jackson argued that Israely would not be harmed by going forward with the case, that only Fishman Jackson stands to gain from the outcome of the state court appeal, and that Fishman Jackson did not want a stay.  *Id.* ¶ 8, 12. Fishman Jackson also argued that it could be years before the state court appeal is finally resolved before the Texas Supreme Court.  *Id.* ¶ 6.

## II. ANALYSIS

The instant motion to vacate will be construed as a motion for reconsideration. "[T]he Federal Rules of Civil Procedure do not recognize a general motion for

reconsideration. . . ." *St. Paul Mercury Insurance Company v. Fair Grounds Corporation*, 123 F.3d 336, 339 (5th Cir. 1997).  However, courts do rule on motions for reconsideration under Rules 54(b), 59, and 60.  See *Rotella v. Mid-Continent Casualty Company*, No. 3:08-CV-0486-G, 2010 WL 1330449, at *5 (N.D. Tex. Apr. 5, 2010) (Fish, J.).  A request that the court reconsider an interlocutory order falls under Rule 54(b).  *See* FED. R. CIV. P. 54(b); see also *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993), *abrogated on other grounds by Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc).

Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, "whether to grant . . . a motion [to reconsider] rests within the discretion of the court."  *Dos Santos v. Bell Helicopter Textron, Inc. District*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (Means, J.).  Further, even though the standard for evaluating a motion to reconsider under Rule 54(b) "would appear to be less exacting than that imposed by Rules 59 and 60 . . . , considerations similar to those under Rules 59 and 60 inform the [c]ourt's analysis."  *Id.*

In contrast to Rule 54(b), which deals with reconsideration of interlocutory orders, Rules 59 and 60 deal with reconsidering judgments.  Under these two rules, "[m]otions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Arrieta v. Yellow Transportation, Inc.*, No. 3:05-CV-2271-D, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009) (Fitzwater, Chief J.) (citation and internal quotation marks omitted), *aff'd*, 641 F.3d 118 (5th Cir. 2011), *cert. denied*, 133 S.Ct 136 (2012).  In this case, Fishman Jackson's motion to vacate attempts to establish that the court clearly erred legally in granting Israely's stay request.

## A.  Which Standard Applies:  *Landis* or *Colorado River*?

At the heart of the dispute between the parties is the question of whether this court should have applied the *Colorado River* standard to Israely's stay request or whether this court had discretion to grant the stay under its inherent powers recognized in the *Landis* decision.[1]  The question of which case applies -- *Landis* or *Colorado River* -- is not "purely academic," because the *Colorado River* factors are different from a *Landis* analysis and, therefore, "the two doctrines are not interchangeable." *Stoltz v. Fry Foods, Inc.*, 60 F. Supp. 3d 1132, 1136 (D. Idaho 2014), *appeal dismissed* (9th Cir. 14-35957) (Feb. 9, 2015).  The question is especially

---

[1]     Black's Law Dictionary defines a "stay" as "[t]he postponement or halting of a proceeding, judgment, or the like." *Stay*, BLACK'S LAW DICTIONARY (10th ed. 2014).

important in this case, in which the parties appear to agree that the stay would not

have been appropriate under *Colorado River* abstention.  *See* Defendant's Response

¶ 3.[2]

In the *Landis* decision, the Supreme Court declared that "the power to stay

proceedings is incidental to the power inherent in every court to control the

disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants."  *Landis*, 299 U.S. at 254.  Although the court decided the

*Landis* case in the context of a district court's decision to grant a stay in favor of

related federal litigation, see *Landis*, 299 U.S. at 249-53, courts have since invoked

the *Landis* decision to grant or deny stays in multiple other contexts.[3]  When deciding

whether to grant a stay under their inherent powers recognized in the *Landis* decision,

_____

[2]      The parties do, however, dispute whether a stay was appropriate under
the court's inherent powers.  *See* Defendant's Response ¶¶ 2-3; Plaintiff's Reply ¶ 4.

[3]      See, *e.g.*, *Bunch v. Alladin Mollabashy, M.D.*, No. 3:13-CV-1075-G(BH),
2016 WL 874747, at *2 (N.D. Tex. Feb. 12, 2016) (Ramirez, J.) (citing the *Landis*
decision in denying a stay to allow *pro se* plaintiff time to find an attorney); *Sparks v.
Texas Department of Transportation*, No. 2:15-CV-139, 2015 WL 6692130, at *3 (S.D.
Tex. Nov. 3, 2015) (citing the *Landis* decision in denying a stay pending the
interlocutory appeal of a previous order); *Rodriguez v. Grand Prairie Independent School
District*, No. 3:13-CV-1788-D, 2014 WL 4055364, at **1-2 (N.D. Tex. Aug. 15,
2014) (Fitzwater, Chief J.) (citing the *Landis* decision in denying a stay to allow
defendant school district to resolve the controversies at issue in a voting rights case
without litigation); *Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Americas, Inc.*,
No. CIV.A. H-15-144, 2015 WL 6394436, at *1, *6 (S.D. Tex. Oct. 22, 2015)
(applying a test derived from *Landis* in granting a stay pending *inter partes* review of a
patent); *Curtis v. BP America, Inc.*, 808 F. Supp. 2d 976, 978-79, 983 (S.D. Tex.
2011) (applying a test derived from *Landis* in granting a stay pending the decision of
the Judicial Panel on Multidistrict Litigation whether to transfer the case).

courts seek to balance the parties' interests. *SuperMedia Inc. v. Bell,* No. 3:12-CV-2034-G, 2012 WL 5389683, at *1 (N.D. Tex. Nov. 2, 2012) (Fish, J.).  While the factors a court might consider under *Landis* vary depending on the context,[4] courts applying *Landis* generally must consider "the competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

Courts have "broad" discretion to grant a stay under *Landis*, especially when there is not a "fair possibility" that the stay "will work damage to someone else."  See *Bell*, 2012 WL 5389683, at *1 (quoting *Wedgeworth v. Fibreboard Corporation*, 706 F.2d 541, 545 (5th Cir. 1983)); see also *In re Ramu Corporation*, 903 F.2d 312, 318 (5th Cir. 1990) (noting that a district court ordinarily has "wide discretion" to grant "[t]he stay of a pending matter").  When there is a possibility that a stay will work

---

[4]       Compare, *e.g.*, *Bell*, 2012 WL 5389683, at *1 (citing *Landis* and applying a six-factor test to determine whether to grant a stay deferring to another federal court) with *Rizk v. DePuy Orthopaedics, Inc.*, No. CIV.A. 11-2272, 2011 WL 4965498, at *2 (E.D. La. Oct. 19, 2011) (citing *Landis* and applying a *different* three-factor test to determine whether to grant a stay pending the decision of a multi-district litigation committee).  District courts also sometimes cite the *Landis* case as authority for their discretion to grant or deny a stay without applying any particular test.  See, *e.g.*, *Rodriguez*, 2014 WL 4055364, at *2.

damage to the non-movant, however, "the suppliant for a stay must make out a clear

case of hardship or inequity in being required to go forward." *Bell*, 2012 WL

5389683, at *1 (quoting *Wedgeworth*, 706 F.2d at 545). Relatedly, notwithstanding a

district court's wide discretion to grant a stay under its inherent powers, a

discretionary stay must not be "'immoderate or of an indefinite duration.'" *Ramu*,

903 F.2d at 318 (quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)).

When applying the *Colorado River* case, courts in the Fifth Circuit employ a

well-established, six-factor test. *African Methodist Episcopal Church v. Lucien*, 756 F.3d

788, 798 (5th Cir. 2014). Under *Colorado River*, courts should consider "whether

exceptional circumstances warrant abstention," in light of the following factors:

> 1) assumption by either court of jurisdiction over a res,
>
> 2) relative inconvenience of the forums,
>
> 3) avoidance of piecemeal litigation,
>
> 4) the order in which jurisdiction was obtained by the
> concurrent forums,
>
> 5) to what extent federal law provides the rules of decision
> on the merits, and
>
> 6) the adequacy of the state proceedings in protecting the
> rights of the party invoking federal jurisdiction.

*Id.* (quoting *Stewart v. Western Heritage Insurance Company*, 438 F.3d 488, 491 (5th

Cir. 2006)). Due to the "virtually unflagging obligation of the federal courts to

exercise the jurisdiction given them," a court's discretion under the *Colorado River*

standard -- when it applies -- is narrowly circumscribed. *Colorado River*, 424 U.S. at

817. Furthermore, a stay under *Colorado River* is appropriate only when another case

is pending before a state court, and the federal case and the state court case are

"parallel," meaning that the cases involve "the same parties and the same issues."

*Lucien*, 756 F.3d at 797 (quoting *RepublicBank Dallas National Association v. McIntosh*,

828 F.2d 1120, 1121 (5th Cir. 1987) (per curiam)).[5] Courts considering stays

pending state court litigation have posited conflicting reconciliations of the *Landis*

and *Colorado River* cases and have, therefore, disagreed about which case applies under

what specific circumstances.

Some courts have held that the *Landis* case applies to temporary stays, whereas

the *Colorado River* standard applies only to dismissals. See, *e.g.*, *Craggs Construction*

*Company v. Federal Insurance Company*, No. 6:06-CV-682-ORL-18JGG, 2007 WL

1452938, at *2 (M.D. Fla. May 15, 2007) (The *Colorado River* standard "is only to be

applied when a federal court is considering whether to *dismiss* an action") (emphasis

in original). The Supreme Court, however, has clearly foreclosed this possibility. See

*Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 27

(1983) (rejecting the contention "that the *Colorado River* test is somehow inapplicable

because . . . the [d]istrict [c]ourt merely stayed the federal litigation rather than

---

[5] The Fifth Circuit, however, has recognized "that there need not be applied in every instance a mincing insistence on precise identity of" the parties and issues. *McIntosh,* 828 F.2d at 1121.

dismissing the suit outright"); see also *Johnson & Johnson Vision Care, Inc. v. Kenneth Crosby New York, LLC*, No. 3:09-CV-874-J34MCR, 2010 WL 1030121, at *2 (M.D. Fla. Mar. 17, 2010) (declining to follow the *Craggs* decision in light of Supreme Court precedent).

Other courts maintain that the *Landis* case applies when the district court does not intend to relinquish jurisdiction over the federal plaintiff's primary claim or when the federal court has exclusive jurisdiction over one or more of the claims.  See, *e.g.*, *Stoltz*, 60 F. Supp. 3d at 1136 ("In the typical *Landis* stay case, a federal court postpones resolution of the case pending some related proceeding.  However, the related proceeding typically serves only to narrow the factual or legal issues for the federal court."); *Klein v. Cook*, No. 5:14-CV-03634-EJD, 2015 WL 2454056, at *3 (N.D. Cal. May 22, 2015) (applying the *Landis* case when the federal court had exclusive jurisdiction over one of the plaintiff's claims and the federal "court made clear that it does not intend to relinquish jurisdiction over [p]laintiff's federal claim"); *Names for Dames v. Gimbel*, No. 88 CIV. 3692 (JFK), 1989 WL 82417, at *3 (S.D. N.Y. July 19, 1989) ("In granting this stay, . . . this [c]ourt has *not* declined to exercise its jurisdiction over this action under the principles of abstention enunciated in *Colorado River*.") (emphasis in original).  These courts essentially conclude that a *Landis* stay is fundamentally different from *Colorado River* abstention, in that *Colorado River* abstention applies only when a federal court relinquishes jurisdiction of a

*primary* issue to a state court.  See *Stoltz*, 60 F. Supp. 3d at 1136 (contrasting a *Landis*

stay with *Colorado River* abstention).

This possibility, however, is also foreclosed by Supreme Court and Fifth Circuit

precedent.  The Supreme Court has made clear that *Colorado River* abstention can

apply even in situations in which a district court merely "postpone[s] the exercise of

its jurisdiction." *County of Allegheny v. Frank Mashuda Company*, 360 U.S. 185, 188

(1959).  "If there is any substantial doubt as to" whether "the parallel state-court

litigation will be an adequate vehicle for the *complete* and prompt *resolution of the issues*

between the parties" . . ., "it would be a serious abuse of discretion to grant the stay

or dismissal at all." *Moses H. Cone*, 460 U.S. at 28 (emphasis added).  The Fifth

Circuit has held that it is an abuse of discretion for a federal district court to defer to

a state court even when the proceedings are not parallel and the state court's decision

will dispose only of some of the issues.  See *American Guarantee & Liability Insurance*

*Company v. Anco Insulations, Inc.*, 408 F.3d 248, 252 (5th Cir. 2005) ("While the two

suits share some issues between Zurich and Anco, Royal is not a party to the state

suit. In addition, the state action does not encompass Zurich's claim for restitution.

The court thus lacked discretion under *Colorado River* to stay in favor of the state

suit.").  Therefore, the distinction between *Landis* and *Colorado River* cannot be based

upon the relative significance of the issues over which the federal court relinquishes

jurisdiction.

Still other courts have concluded that a district court has discretion to apply either the *Colorado River* or the *Landis* case in considering whether to grant a stay in deference to a parallel or related state proceeding. See, *e.g.*, *Melo v. Gardere Wynne Sewell LLP*, No. 3-04-CV-2238-BD, 2005 WL 991600, at *3 n.3 (N.D. Tex. Apr. 21, 2005) (Kaplan, Mag. J.) ("Even if abstention is not warranted under the *Colorado River* doctrine, a federal court has the inherent power to stay proceedings . . . . The Fifth Circuit has specifically recognized that district courts have inherent power to stay a federal lawsuit in favor of a concurrent state court proceeding even when other standards for abstention are not strictly met."); *Calleros v. FSI International, Inc.*, 892 F. Supp. 2d 1163, 1171 n.8 (D. Minn. 2012) (quoting *Landis*, 299 U.S. at 254) ("Apart from [*Colorado River*] abstention, the [c]ourt enjoys the inherent power to stay proceedings before it, 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"); *Rhodes v. Independence Blue Cross*, No. CIV.A. 11-1881, 2012 WL 447544, at *3 n.4 (E.D. Pa. Feb. 9, 2012) ("[T]he [c]ourt concludes that a stay under the [c]ourt's inherent authority is appropriate. Thus, the [c]ourt does not address the parties' arguments as to the *Colorado River* doctrine."); see also *Davenport v. HansaWorld, USA*, No. 2:12-CV-233-KS-MTP, 2016 WL 320953, at *1 (S.D. Miss. Jan. 25, 2016) (deferring to a state court based on the *Landis* decision without mentioning the *Colorado River*

standard).  These courts essentially treat *Colorado River* and *Landis* as equal alternative

bases to grant a stay in deference to a state court deciding overlapping issues.[6]

This view, however, is likewise precluded by Supreme Court and Fifth Circuit

precedent.  See, *e.g.*, *Anco Insulations*, 408 F.3d at 250 (holding that, when a district

court stays "a federal suit pending the outcome of state proceedings[,] . . . [o]ne of

two standards governs the propriety of a decision to stay based on considerations of

wise judicial administration, depending on whether the federal suit is purely

declaratory or seeks other relief.");[7] see also *Cottrell v. Duke*, 737 F.3d 1238, 1248

---

[6]      Courts in the Fifth Circuit that treat the *Colorado River* and *Landis* cases as equal alternatives for granting a stay in favor of a related state court proceeding generally cite *Itel Corporation v. The M/S Victoria U (Ex Pishtaz Iran)*, 710 F.2d 199 (5th Cir. 1983), or *PPG Industries, Inc. v. Continental Oil Company*, 478 F.2d 674 (5th Cir. 1973).  See *Melo*, 2005 WL 991600, at *3 n.3.  In the *Itel* case, however, the Fifth Circuit was considering a stay in favor of an international tribunal, rather than a state court.  *Itel*, 710 F.2d at 203.  This difference is significant under the *Colorado River* decision.  The *PPG Industries* case was decided before the Supreme Court issued its landmark decision in *Colorado River* and, therefore, "likely is outdated."  *Byrd v. Board of Supervisors for the University of Louisiana System*, No. CIV.A. 14-2804, 2015 WL 4253967, at *2 n.1 (W.D. La. July 13, 2015).  Regardless, the *PPG Industries* case took place in the context of a suit seeking only equitable relief.  See *PPG Industries*, 478 F.2d at 681 (holding that "in an equity suit, the federal district court has the power to stay its hand pending the outcome of a parallel state action").  The *Colorado River* standard does not apply to cases in which a plaintiff is seeking only declaratory relief.  *New England Insurance Co. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009).

[7]      The "two standards" are based on *Colorado River* and *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942).  See *Anco Insulations*, 408 F.3d at 252.  The *Brillhart* standard applies when the plaintiff is seeking solely declaratory relief and is, therefore, *prime facie* inapplicable to the current dispute, in which Fishman Jackson seeks exclusively coercive relief.  See *id.*

(8th Cir. 2013) (relying on *Colorado River*) ("Though these powers [under *Colorado River* and *Landis*] coexist, they are different and cannot be used, as they were here, as alternative methods for accomplishing an identical result."). In other words, the *Colorado River* and *Landis* doctrines are not simply alternative means of reaching the same result.[8]

This court concludes that the correct view is that the *Colorado River* standard -- and not a standard derived from *Landis* -- applies when a court is considering a motion to stay in favor of a state court proceeding when the state court preceding will have a preclusive effect on any of the issues being considered by the federal court. This conclusion is strongly supported by the following language from the Supreme Court's opinion in *Colorado River*:

> Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction . . . ." As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. *This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from*

---

[8]     This conclusion is bolstered by the fact that the *Colorado River* standard allows for less discretion than the *Landis* decision. A court is permitted to grant a *Colorado River* stay only under "exceptional circumstances." *Colorado River*, 424 U.S. at 813 (internal quotations omitted). If a court could simply grant a stay under *Landis* whenever the *Colorado River* test was not satisfied, the Supreme Court's clear intention to narrowly circumscribe *Colorado River* discretion would be vitiated. To put it differently, the *Colorado River* doctrine is best understood as an additional limitation on a court's inherent authority to grant a stay discussed in the *Landis* decision.

> *the virtually unflagging obligation of the federal courts to exercise*
> *the jurisdiction given them*.

*Colorado River*, 424 U.S. at 817-18 (internal citations removed) (emphasis added).

As other courts have recognized, this language means that "only exceptional circumstances permit a federal court to *refuse to exercise its jurisdiction* in deference to a concurrent state proceeding." *Cottrell*, 737 F.3d at 1249 (emphasis added). Although "a district court retains its inherent power to control its docket when facing concurrent state and federal litigation," this power is limited by the *Colorado River* factors. *Id.* "To permit a district court to rely solely on its inherent power to control its docket, when the effect of the district court's order is to accomplish the same result contemplated by *Colorado River*, would allow a court to bypass the rigorous test set out by the Supreme Court." *Id.* If a federal court grants a stay in favor of another federal court or for some other reason, the federal courts are not declining to exercise jurisdiction over claims properly before them. See *Colorado River*, 424 U.S. at 817-18. But when a federal district court allows a state court to finally resolve any issue properly before the federal court -- whether indirectly, through principles of issue or claim preclusion, or directly, through dismissal of the cause of action -- the federal court is effectively surrendering its jurisdiction to the state court. See *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 722 (1996) ("To be sure, the abstention doctrines and the doctrine of *forum non conveniens* proceed from a similar premise: In rare circumstances, federal courts can relinquish their jurisdiction in favor of another

forum."). Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," a federal court may not relinquish jurisdiction to a state court absent the "exceptional circumstances" discussed in the *Colorado River* decision. *Colorado River*, 424 U.S. at 813, 817-18.[9]

### B. The Legal Effect of the State Court Decision on the Current Case

This is not the end of the inquiry, however. As discussed above, the *Colorado River* standard applies when -- whether by postponing the exercise of jurisdiction or by declining to exercise jurisdiction -- a district court effectively relinquishes its jurisdiction over an issue or claim to a state court. Therefore, the court must now examine whether, here, a decision in the state court appeal could have a legally

---

[9] Other cases also support the court's conclusion that the *Colorado River* standard applies when a federal court cedes jurisdiction to a state court. The Fifth Circuit has made clear that *Colorado River* limits the discretion of a district court to defer to a state court proceeding even when -- indeed, especially when -- the state court proceeding will resolve some but not all of the issues before the court. See, *e.g.*, *Anco Insulations*, 408 F.3d at 252 (reversing the grant of a stay when the state case and federal case were not parallel but the state case would have resolved some issues). Similarly, the Supreme Court has held that it would be a serious abuse of discretion to grant a stay in favor of a state court considering overlapping issues, unless the state court proceeding will afford a "complete . . . resolution of the issues." *Moses H. Cone*, 460 U.S. at 28. Therefore, if a pending state court case could have a legally preclusive effect on some or all of the issues in a federal court case or will otherwise "settle[] the rule of law that will define the rights of" the parties, *Landis,* 299 U.S. at 255, the federal court must apply the *Colorado River* standard or some other abstention doctrine in deciding whether or not to grant a stay. See *Abstention*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "abstention" as "[a] federal court's relinquishment of jurisdiction when necessary to avoid needless conflict with a state's administration of its own affairs.").

preclusive effect on this court for any of the issues or claims under consideration in the current case.  If the state court appeal will have a preclusive effect on any of the issues or claims before this court or this court otherwise intends to let the state court decide a legal or factual issue, the court should have applied the *Colorado River* test to Israely's motion for a stay.  Under the *Colorado River* standard, it is undisputed by the parties that this court should not have granted the stay.  *See* Defendant's Response ¶ 3.  If, however, the state court case will not have a preclusive effect on any of the issues or claims before this court, the court will consider whether it could have granted the stay under its inherent powers recognized in the *Landis* decision.  The court concludes that the underlying case will not have a legally preclusive effect on any of the issues or claims in the current case.  Further, the court does not otherwise intend to give up its jurisdiction over any issue.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  "Claim preclusion" prevents a party from litigating the same claim more than once, "whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).  Because Israely has made no claims in the state court case and Fishman Jackson is not a party to the state court case, this court will focus on issue preclusion.  "Issue preclusion, in contrast [to claim preclusion], bars 'successive litigation of an issue of fact or law

actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *Maine*, 532 U.S. at 748-49). In light of the "deep-rooted historic tradition that everyone should have his own day in court," a person who was not a party to a case in which an issue was litigated will not be bound by issue preclusion. *Richards v. Jefferson County, Alabama*, 517 U.S. 793, 798 (1996) (internal quotations omitted). Furthermore, the issue must have been "actually litigated" in the earlier proceeding and must have been "essential to the prior judgment" in order for issue preclusion to apply. *Taylor*, 553 U.S. at 892.

It is true that the state court appeal could affect the current case -- otherwise, this court would never have granted the stay in the first place. As Israely notes, the state court case "potentially effects [sic] both the liability of Fishman Jackson and Israely's damages in this case" for his counter claim. Defendant's Motion to Stay ¶ 9. Accordingly, it is also true that the state court case could affect Israely's ability to present an effective defense in this case. See *In re Texas Collegiate Baseball League, Ltd.*, 367 S.W.3d 462, 466 (Tex. App.--Fort Worth 2012, orig. proceeding). In both of these respects, the state court case is indeed factually relevant to the case before this court.

Nevertheless, the court concludes that, although the resolution of the state court appeal will contribute to the development of facts relevant to the current case,

the state court appeal will have no legally preclusive effect on this court whatsoever.

First of all, the state appellate court is considering different issues than this court will

be considering.  See *Taylor*, 553 U.S. at 892 (noting the requirement for issue

preclusion that the issue be actually litigated).  In reaching a decision on Israely's

counterclaim, this court will need to determine (1) whether Fishman Jackson

committed malpractice and (2), if so, what, if any, are Israely's damages.  The issue

on appeal in the state court case is ultimately what damages or attorney's fees, if any,

Israely owes to a third party.  While the issue on appeal in the state court is *relevant*

to Israely's damages for his counterclaim in this court, the two issues are not

identical.  Even if Israely is found liable for the full $2,600,000 in the state appellate

court, this court could find that any, all, or none of that amount was attributable to

Fishman Jackson's malpractice -- if indeed Fishman Jackson committed malpractice at

all.[10]  In theory, this court could even find that Fishman Jackson's malpractice -- if

any -- caused more than that amount in damages.  The state court will not be

determining *whether* Fishman Jackson committed malpractice at all.  Therefore, the

---

[10]     An illustration will help clarify the court's point.  If a personal injury
plaintiff went to the hospital during the pendency of his claim, the hospital trip
would not have a legally preclusive effect on the factfinder in his case.  The factfinder
would be free to determine whether any, all, or none of the plaintiff's expenses
incurred at the hospital were attributable to the defendant's alleged negligence.
Nevertheless, the hospital trip would certainly be relevant to the issue of the
plaintiff's damages and useful for the factfinder to consider.

state court is considering different issues from this court, and, thus, issue preclusion does not apply.

Even if the state court were considering overlapping issues, this court would still not be bound by the state court's determination. Fishman Jackson is not a party to the state court case. Therefore, no part of the state court's decision could be used against Fishman Jackson. See *Taylor*, 553 U.S. at 893. None of the exceptions to the rule against non-party issue preclusion apply in this case. See *id.* at 893-95. Finally, neither the issue of Fishman Jackson's liability for malpractice nor the issue of Israely's damages for his counterclaim will be essential to the state court's judgment -- even to the extent the state court discusses these issues in *dictum*. See *Taylor*, 553 U.S. at 892 (noting the requirement for issue preclusion that the issue be essential to the court's judgment). For all of these reasons, the state court's decision will have no legal effect on this court, and this court is not relinquishing jurisdiction over any issue to the state court. Therefore, the court, in its sound discretion, could have granted the stay using its inherent powers recognized by the Supreme Court in the *Landis* decision. See *Landis*, 299 U.S. at 254.

## C.  Was the Stay Proper under the Court's Inherent Powers?

A district court has "general discretionary power to stay proceedings before it in control of its docket and in the interests of justice." *Ramu*, 903 F.2d at 318 (quoting *McKnight*, 667 F.2d at 479). A discretionary stay, however, should not be of

an "immoderate or of an indefinite duration." *Id.* (quoting *McKnight*, 667 F.2d at 479). "Thus, a stay must be 'so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.'" *Wedgeworth*, 706 F.2d at 545 (quoting *Landis*, 299 U.S. at 257). Furthermore, despite a court's broad discretion to grant a stay under its inherent powers, the court should consider (1) possible harm to the non-movant, see *Hall*, 300 F.2d at 268, (2) hardship or inequity for the movant in being required to go forward, see *id.*, and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*; see also *Wedgeworth*, 706 F.2d at 545-46. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

The stay granted in the current case was not of an "immoderate or . . . indefinite duration." See *Ramu*, 903 F.2d at 318. The court granted the stay pending only the "resolution of [the] appeal currently . . . before the Texas Thirteenth District Court of Appeals." Order of December 14, 2015. The court did not state whether or not the stay would remain in effect while Israely appealed the case to the Texas Supreme Court.[11] In the state court appeal, the appellants' reply was due

---

[11]     In fact, the court strongly implied the opposite, as the court stated the
(continued...)

January 15, 2016.  Defendant's Motion to Stay at 6.  Therefore, the state court appeal could be decided any day now, if it has not been decided already.[12]  Moreover, this court made clear that "[t]he case may be reopened, without prejudice, upon the motion of any party" and that "[t]he right to reopen shall continue until 30 days after the Texas Thirteenth District Court of Appeals has rendered its decision."  Order of December 14, 2015.

The court concludes that the stay will not cause harm to Fishman Jackson. Due to the limited nature of the stay and the advanced progress of the state court appeal, the stay will likely be lifted before the current case would have proceeded much further without the stay.  *See* Order of December 14, 2015.  Fishman Jackson may make a motion to lift the stay at any time.  *Id.*  Furthermore, Fishman Jackson maintains that "the benefits, if any, from deferring to the state appeal flow to [Fishman Jackson] -- not Israely."  Plaintiff's Motion to Vacate ¶ 14.  Fishman Jackson also alleged that Israely's malpractice claims are "frivolous and utterly without merit."  Plaintiff's Reply ¶ 12.  The court, then, does not think that Fishman Jackson will be harmed by waiting a short period of time to see if Israely has any potential damages for a "frivolous" counterclaim, especially when waiting on the state

---

[11](...continued)
right to reopen continued "until 30 days after the Texas Thirteenth District Court of Appeals has rendered its decision."  Order of December 14, 2015.

[12]      Neither party has updated the court on the progress of the state court appeal.

court appeal will, according to Fishman Jackson, redound entirely to Fishman Jackson's advantage.  Plaintiff's Reply ¶ 8; Plaintiff's Motion to Vacate ¶ 14.

This is not, moreover, a case in which Fishman Jackson is being asked "to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both." *Landis,* 299 U.S. at 255.  Although the resolution of the state court appeal is factually relevant to the current case, the state court case will not define Fishman Jackson's legal rights.  This court will be able to rule independently on Fishman Jackson's claims and Israely's counterclaims, regardless of the outcome of the state court appeal.  The court will not be bound by issue or claim preclusion based on the resolution of the state court case.  Neither party has pointed to an unsettled legal principle under consideration in the state court that will have an effect on the current case, and the court does not otherwise choose to relinquish its jurisdiction.  Waiting a short period of time for the state appellate court to reach a decision will not harm Fishman Jackson.  See *In re Colonial Bancgroup, Inc. Securities Litigation*, No. CIV A 2:09-CV-104-MHT, 2009 WL 3110820, at *1 (M.D. Ala. Sept. 25, 2009) ("This court declines to engage in an extended analysis of the dangers of 'justice delayed' in light of the brevity of this contemplated suspension. . . .  As this suspension will hardly be 'indefinite' and indeed of a very 'limited' nature, the court finds that neither party will be harmed by this brief stay.")

The court also concludes that Israely will not necessarily suffer hardship or inequity from being required to go forward in this case. See *Hall*, 300 F.2d at 268. It is true that a claim for malpractice is a compulsory counterclaim in a suit for fees. *Bailey v. Travis*, 622 S.W.2d 143, 144 (Tex. App.--Eastland 1981, writ refused n.r.e.). It is also true that, under Texas law, malpractice can be a defense to a claim for attorney's fees. See *Texas Collegiate Baseball League*, 367 S.W.3d at 467 ("[Plaintiff]'s alleged malpractice . . . will be central to [defendants'] affirmative malpractice [counter]claims and their defenses to [plaintiff]'s fee claim."). The court, however, agrees with Fishman Jackson that "[t]he [c]ourt need not wait on a state appellate court to determine if Israely has a 'viable' counterclaim for damages." Plaintiff's Motion to Vacate ¶ 13. The court also agrees with Fishman Jackson that Israely can already present any of his malpractice counterclaims to this court even without a decision in the state court appeal. See *id.* ¶¶ 13-14. Therefore, requiring Israely to go forward will likely not cause him hardship.[13]

Nevertheless, the court concludes that waiting a short period of time for the state appellate court to reach a decision will simplify the issues and proof in this case. See *Hall*, 300 F.2d at 268. While the state court case will not *resolve* any of the issues before this court, as explained *supra*, the outcome of the state court case will provide

_____

[13]     But see *Texas Collegiate Baseball League*, 367 S.W.3d at 466 (implying, in a similar state court case, that defendants would "potentially be prejudiced by having to defend [a] fee claim while the [previous] litigations remain pending and while [defendants'] malpractice defenses to the fee claim are not mature.").

additional factual information relevant to whether Fishman Jackson committed malpractice and the extent of Israely's damages for his counterclaim.  The outcome of the state court case will also potentially assist the court in determining whether or not Israely has a defense to Fishman Jackson's fee claims.  Because the stay will not harm Fishman Jackson but will, on the other hand, simplify the issues before the court, the court concludes that the stay was within the court's inherent powers.  The stay was appropriate under the court's inherent powers.  If Fishman Jackson, however, has reason to believe that a stay is no longer appropriate (*i.e.*, because the state appellate court has reached a decision), it should file a motion to reopen the case.

### III.  CONCLUSION

For the reasons stated above, the plaintiff's motion to vacate the stay is **DENIED**.

**SO ORDERED**.

April 12, 2016.

_____

A. JOE FISH
**Senior United States District Judge**